Good morning, Your Honors. James Thibault for the County of Kern, Sheriff Sparks, and 17 Sheriff's Officers. I would focus most of my time on Alexander and Diorre and the reasons why those cases do not clearly prescribe the officers' actions in this case. There's an additional issue, of course, pertaining to whether the so-called surrendering scenario required denial of qualified immunity on the excessive force claim. But before I do that, there's two aspects of the immunity, the qualified immunity, which we believe were never addressed by the plaintiffs in this case. And if observed by the district court, would have mandated a different result on excessive force claim. The first is the Supreme Court's repeated admonition, most recently in Saussure, that a plaintiff must show, in light of pre-existing law, that the officers acted with plain incompetence or knowingly violated the law. That is obviously a very deferential standard. I'm sorry, how did you state that last standard? Deferential. Knowing violation of the law? I thought it was that a reasonable officer should have known that it was a violation of clearly established law. That the officer did not act with plain incompetence or knowingly violate the law. Well, the standard really is an objective standard, whether he should have known that it was a violation of the law. Saying that it's knowingly is a subjective standard, right? Well, that's the language of the Supreme Court, Your Honor, and of course we do apply an objective standard to that. In other words, we hypothesize a reasonable officer facing the same situation confronted by the defendant officers. But my point being that, again, what we're looking for when we look at the record of the officer's conduct is whether they acted with plain incompetence. I don't think we have anything approaching that in this case. Do you think it's incompetent to set out to bring somebody to see a doctor, go to a hospital, and you end up killing him? Well. Very competent result. Well, Your Honor, I think that assumes that they set out to kill him, which they did not. We think that one of the. I don't think he said that. He said they set out to take him to the hospital and they end up killing him. Right. That didn't seem like a very competent result. Well, of course, a lot of that depends on the actions of the person they're trying to take into custody, obviously. And I will address that. I'd like to start with the Fourth Amendment. They didn't have a warrant. Everybody knows you need a warrant to go into somebody's home. Why doesn't a reasonable officer know that? Well, Your Honor, we have a situation where the officers had probable cause that Fetterman posed a danger to himself or others under Welfare and Institutions Code 5150. Is that a dispense with a warrant? What that. Is there some law that says that dispenses with a warrant? What we have argued is. Not what you argue. Tell me, is there a law that dispenses with a warrant? Yes, there is. What is that law? I mean, there's two exceptions to the warrant requirement. One, an exigency or a dangerous situation. Exigency in what sense? Because you've got a criminal. You can take a criminal into custody and, I suppose, follow him to the house if you have to. But how does that apply to a civil proceeding where you're just taking somebody who's crazy? Well, it's not just that they're crazy. It's that they are a danger. They pose a danger to themselves or others. And the officers have probable cause. Well, you have the statute telling them that they could, under those circumstances, take him to a place. Where does it say they may enter his home and do it? Well, there's no explicit statutory authority. No statutory authority. You've dropped the word explicit. There's no statutory authority. So it's just imagination. Well, the probable cause that the officers had under 5150 falls within a warrant exception. And that you find that, say, where? Well, there's plenty of case law, I think, to that effect. There's Mag v. Wessler. Whose case law is that? Ninth Circuit case law. Well, when you say falls within the warrant exception, the exception for what? I mean, warrant not to enter a home. Well, I think you have to start with Peyton, Your Honor. Peyton was the Supreme Court case which said you cannot enter a home to effect a routine felony arrest without a warrant. Right. Part of our point here is that's not the situation we have. Of course. We fall within the. . . Of course, because there was no felony, right? So there's no probable cause. Well, there's not. . . We believe that a felony had been committed, so there's no. . . So that doesn't help you, though. We believe the facts of this case fall within the situation which the Supreme Court declined to address in Peyton, which is an exigent or dangerous circumstance. The exigency, though, has to be immediate and real in the sense that, you know, something endangering the public safety is so imminent that there's not time to get a warrant, even by telephone. That wasn't the case here, was it? I mean, they stood around for hours, right? They could have gotten a warrant. They could have phoned the municipal court judges. Listen, Judge, we need a warrant. We've got this crazy man out here, you know, and we think we have to go inside the house. Right? There wasn't that kind of exigency, was there? Your Honor, in California, a magistrate does not have authority to issue a warrant. Well, they could have run down to Bakerfield. . . Right? They were there for hours, weren't they? Literally hours. But, again, they never entered their minds to seek a warrant. Well, that's the problem, that reasonable, unreasonable. They never entered their mind that they could have gotten a warrant, that they were going to go into a man's house to seize him for a non-crime. A warrant was ñ a magistrate would have been acting beyond his authority to issue a warrant for this kind of situation. Would you suggest that the police officers were acting beyond their authority to enter the home? No. Why does it make sense that if you don't have probable cause to enter, to take the person who's mentally ill out of the home, that you can just storm it anyway? Whereas if it's a criminal, you have to have probable cause. Whereas if it's someone who's ill, you don't. Well, I think you have to look at the nature of a 5150 detention, which is a detention of a person who, due to their mental illness, poses a danger to themselves or others. That probable cause in this case, by the way, is not in dispute. Therefore, we ñ these officers had a reasonable belief that they had a dangerous situation which excused the warrant requirement. Could I go back a moment? Did I understand you to say that no magistrate could have issued a warrant? Correct. And there would be no way of getting a warrant under that statute? Correct, Your Honor. Well, that's a very improbable conclusion. I think I'm going to hold you to it. Yes, because warrants in California, be it search warrants or arrest warrants, issue for the commission of public offenses. A 5150 in California law just does not provide for a way of entering a home and seizing an ill person. See, I just don't understand why you keep saying probable cause is not necessary. The statute says in its language that when a person is mentally ill and is a danger to himself or others, a certain professional person designated by the county may, upon probable cause, take or cause to be taken the person into custody. So it requires probable cause. Yes. And what I am saying is the existence of probable cause to affect that detention is not in dispute in this case. What is in dispute is whether that probable cause falls within a warrant exception. Well, once he shot out of the window, didn't they have probable cause to get a warrant? Well, Your Honor, actually, the Fetterman began firing at them as they affected entry. No, it preceded it. Well, there was one shot out the window. Why did they stop? Call off the magistrate? Because the entry team was coming through the front door at that point. Was that quick? Yes, it was, Your Honor. They spent four hours out there trying to talk him out of the house. He wouldn't come out of the house. They effected a plan to take him into custody safely, and he resisted by shooting at the officers twice as they entered. Well, the portion of the plaintiff's claim or complaint as to which the qualified immunity was denied, in other words, the portion you're appealing, right? Right. It really wasn't based on. It was not the Fourth Amendment part, was it? Well, in the sense of. We're appealing the denial of the qualified immunity as to the shooting. On the excessive force. Excessive force case. Now, why don't you just address that for me? Okay. In other words, why were the officers entitled to qualified immunity on the use of force? Because, Your Honor, at the time the officers used deadly force, they had probable cause to believe that there was a threat of serious injury or death, pure and simple. Nothing really just focuses on the immediate circumstance surrounding the fatal shot, right? Correct, Your Honor. In other words, what was he doing? What was the officers doing? He, meaning Fetterman, what did the officers see? Did he have a knife? All this kind of stuff. Is that right? Correct, except, Your Honor, the officers are entitled to rely on information which has a bearing on whether Fetterman posed a threat. For example, the fact that he had already shot at them twice. The fact... Could I just pursue that for a minute? Because I'm looking at the transcript of the testimony of one of the officers, Fetterman, page 397 of the excerpt. When you heard that second shot and saw the muzzle flash, was there any question in your mind, did you make sure all of the entry team got outside? Yes, sir. They got out. Right. They didn't keep rushing on. They got out. Right. So they could have called for a warrant. Okay. There was actually... Is that right? There was an initial entry when Fetterman fired at the officers. Right. When they fired at him, they withdrew outside. They had time then. Pardon me? Then they had time to get a warrant. There was no warrant to get, Your Honor. There was for that. It was a crime. They'd been shot at. Well, okay. Okay. But at that point, he shot at them. We clearly have an exigency at that point. Do we? Absolutely. An exigency of your own creation. I think what she had said earlier was there was no time because everything else happened almost simultaneously or immediately after that. The entry to the house, in other words, was almost right after the shot, right? Or almost at the same time as the shot. The initial entry, on the initial entry, Fetterman fired at the officers twice. They withdrew outside the house. They spent 10 or 15 minutes trying to talk him out of the bedroom. They instructed him to come out of the bedroom and lay on the floor, to come out unarmed. He came out with the guns in his hand and within a two- or three-second time period dropped the guns and advanced from a position about 12 feet, 12 to 14 feet from the officers to a position of 5 to 6 feet with a knife in his hand. But isn't there a dispute as to what he was doing with the knife? Well, there's a dispute insofar as the plaintiff's claim that you could interpret his actions as surrendering. I think that that would be probably the strangest manner of surrender of all time. But nevertheless, Your Honor, the inquiry we have on the excessive force claim is whether any reasonable officer could believe that Fetterman posed a threat of serious injury or death at the moment of shooting. And even if the officers were mistaken with respect to the facts that go to that determination, they're entitled to qualified immunity unless they acted with plain incompetence or knowingly violated the law. Well, you say anybody would know he was going to attack them. But here's a man who has two guns and he abandons them. Yes, he did. That's strange behavior if he's going to attack them. This was the action of Fetterman was, I don't need these drawknife demands on the officers. I can't emphasize enough the short time frame. The qualified immunity is particularly appropriate for cases like this where the officer has to make a split-second determination. When his life or her life is in jeopardy. With that, Your Honor, I'd like to reserve four minutes for about a minute. That's fine. Good morning, Your Honors. John Burton for the plaintiffs in the trial court. I'd like to mention a few issues on our appeals. But before I do that, if I could first address some of the questions that came up during the argument I just heard. The first is, of course, Justice Judge Wardlaw, you're right, it's a completely objective standard. There's no requirement that the officers actually know that what they are doing is in violation of established law. Second, there was no exigency here to excuse the warrant requirement. That's what the trial court found. That has never been challenged. It's not challenged on this appeal. The reason that there's no exigency is really quite simple, is there was no exigent entry. When Sergeant Adam got to the house, Mr. Fetterman would not come out. And then that was at something like 10.30 a.m. The entry itself was at 6.30 p.m. They had time to bring a SWAT team to the location. They certainly had time to obtain a warrant. There was a mention that the Mag v. Wexler case, M-A-A-G, which is a Ninth Circuit case that both sides cited in their briefs, provides some sort of exception to the warrant requirement for these sort of civil commitment seizures. That is incorrect. In Mag, the person who was seized I believe was a farmer living with his family, and the family invited the police onto the property where they took him into custody, and then he filed a 1983 case. So the entry itself was authorized by consent, which would obviate the necessity for a warrant. The defendants say that they could not have gotten a warrant to go into a home to do a 5150 seizure. Frankly, their argument is somewhat Byzantine and has to do with 1872 statutes authorizing magistrates. Are you arguing your own appeal now? I was just addressing the questions that came up during. That does go to our appeal, yes. It does go to our appeal. If you're going to talk about your appeal, it seems to me, and it's contested, there's a serious question on whether that order is appealable. Let me address the appealability. Well, we have two issues on appeal. One is the dismissal of the Monell claims, which has not been addressed at all. I'll have to take a few minutes to address that. But second is the appeal of the grant of qualified immunity for the warrantless entry. There is no Ninth Circuit case saying one way or another whether grants of qualified immunity, as opposed to denials of qualified immunity, are appealable in a locutory. That's probably because most of the time, those kind of rulings terminate the case and result in final judgments. However, I don't think that this panel needs to decide that issue in this case. That issue is what? Whether it's appealable? Whether a grant of qualified immunity is appealable. I don't think it's appealable because here the ruling on the warrant is within the pendent appellate jurisdiction of the court when it determines the denial of qualified immunity on the excessive force claim. Why is that? That's because plaintiffs' accept the force doesn't depend on the, you know, compliance with the warrant at all, does it? It does according to defendants' construction of the case. One of the cases which seems to be most on all fours with this one is Alexander v. City and County of San Francisco. In that case, very similar facts, crazy guy in a house, SWAT raid. He winds up being shot and killed over apparently a sewage problem that he had. The court in that case said very clearly that regardless of whether at the moment the officer shot this man, Quade, who actually had a firearm, and regardless of whether the shooting was justified at that time, they could be held liable for excessive force, for use of excessive force, for creating the situation where the lethal force became necessary. There have been at least two cases now of the Ninth Circuit that have addressed Alexander in different situations. One is the Duran v. City of Maywood case. Another is this Billington v. I believe it's City of Boise. And in the second case, the court said, well, the initial conduct of the officer that sets up the situation for the use of lethal force should itself be a Fourth Amendment violation. Now, we on the plaintiff's side in this case say that just the use of a SWAT team to take a person who is nonviolent, nonthreatening, but maybe is having a mental episode, that that itself is excessive force sufficient to trigger Alexander liability. The defense is saying, quite explicitly in their papers, that that antecedent Fourth Amendment violation has to be that the entry itself was unconstitutional. So this Court, to fully dispose of the defendant's claims on excessive force, has to reach the issue of whether or not the entrance itself was unconstitutional. Because of the lack of the warrant. I think, as such, that would bring this case clearly within the pendent jurisdiction of the court under the Hushey v. City of San Jose case, which involved a qualified immunity claim and then also a claim by the city. And since the existence of the constitutional right had to be addressed in both appeals, there was pendent jurisdiction over what otherwise would have been a non-appealable interlocutory order. But which constitutional right are you referencing there? The Fourth Amendment? Well, there's two aspects, yes. But there's two aspects to the Fourth Amendment claim. One is the entry without a warrant or exigency or consent. The second is subjecting Mr. Fetterman to excessive force. Right, and you're arguing these are interrelated. And I just wanted to ask, to probe that, because assume that the warrantless entry was constitutional because 5150 was constitutional, not just that they get qualified immunity for it, and they went in and the facts proceeded as they did here. Don't you still have a valid excessive force claim regardless of the constitutionality of the first entry? I think the plaintiffs say, and let's say regardless of whether the need to use lethal force at the moment of the shooting was present, if we set that question aside. Let's just assume that Mr. Fetterman, like Mr. Quaid, was pointing a gun when he was shot. I think we still have a valid Fourth Amendment claim under Alexander because it was excessive force to use a surprise SWAT entry to take somebody into custody for a mental health evaluation. The defendants take the opposite position on that issue. Okay, but whether or not the SWAT team had a warrant, your position would be that it's still excessive to send a SWAT team in to remove someone who was mentally ill. Exactly, because those are the facts of Alexander where they did have a warrant to enter the house, although it was for an inspection of the sewage leak, and then they used the SWAT team to execute it. And the Ninth Circuit said under those situations, that's a classic case of excessive force. Do you agree with defense counsel's statement that under California law, a magistrate judge could not issue a warrant under 5550? 5150, absolutely not. I do not agree with it. The way that I read the defendant's argument is that the statute set up magistrates, and the magistrates have whatever power is given to them by the statutes. I see this really as a balance of powers question, that there's an independent judiciary in the state of California, the responsibility of which is in part to check abuses by the legislative and executive branches, and that's where the warrant power comes from. It's an inherent power of the judiciary. It just so happens there's no case one way or another on whether an officer can go to a magistrate judge and say, here's my probable cause to have a warrant to go in the house and see someone. But it's our position to follow up on that point, that regardless, if there's no power for the officer to get a warrant, and the Fourth Amendment requires a warrant, then he can't go in, not that he can go in without a warrant. In other words, we think that the Fourth Amendment here is controlling, not the statutes of the state of California, even if they are, as the defendant interprets them. And we find that to be a very strained, convoluted interpretation, and one without any presidential support. If I could turn briefly just to the dismissal of the Monell claims, unless the panel has any questions regarding the Fourth Amendment issues. This issue of whether or not the sheriffs of the state of California act for the state or the county has been through a lot of stages. How is that order appealable? I'm relying on the- It certainly is not intertwined with any other issue, is it? Whether or not the sheriff acts for the state or the county. I think it is intertwined with the fact of whether or not there was a constitutional violation, a Fourth Amendment violation. By individuals? Right. And I think that's exactly what the holding of Hushey v. City of San Jose. Now, I read the street decision, which Judge Wardlaw specifically said that the order denying a dismissal of the county on the grounds that they were state actors to be an appealable collateral order to apply equally to a grant. It's not the same as qualified immunity. Well, what's the basis for permitting an appeal of the denial? That's the holding of Street v. County of Los Angeles. What's the reason? The reason is because if the county is acting as an arm of the state and is entitled to immunity, requiring them to go forward with the trial deprives them of the immunity, no matter what the outcome of the trial is, because immunity is immunity from trial, not immunity from a judgment. I think that's the rationale behind the right to immediately appeal the denial. But what's the rationale to immediately deny the grant? I think that the rationale that you stated is applicable to qualified immunity but not to the Eleventh Amendment immunity, which is the state v. county issue, because I don't think there's the same interest in a government not going to trial as there is in a public servant. I know, but is that one of the lawyers anyway, just sitting around waiting for it to be called for trial? Well, the whole rationale of Forsyth Appeals is to protect public servants from being dragged into trial when their conduct did not violate fully established law. Assuming that this court does find appellate jurisdiction, and we think that the case is also within the pendent jurisdiction of the court under Hushey v. City of San Jose, because there was a Monell issue intertwined with a qualified immunity issue, we're both turned on whether or not there was a Fourth Amendment violation. In other words, you see, but this one doesn't turn on that. This turns on whether or not the sheriff is acting on behalf of the state or on behalf of the county, right? That's true. So what's the intertwining? The sheriff wouldn't have any liability if he's acting for the county. There is no Fourth Amendment violation, but he would have potential liability if there is a Fourth Amendment violation. No, no, no, no, no. That's once you determine that he's acting for the county. But in terms of county versus state, it doesn't matter whether there's a Fourth Amendment violation or not. If he's acting for the state, he's immune under the Eleventh Amendment, right? Even if there's a Fourth Amendment violation, he can't sue the state. That's correct. So it doesn't depend on the Fourth Amendment violation, does it? Well, I think it does. All right. But I agree with everything you say, except for that. Except the last line. All right. Go ahead. Go ahead. At any rate, perhaps the – if the case – if this case does get remanded to the trial court, perhaps the trial court would reconsider its ruling dismissing the Monel claims because there was a rather dramatic intervening change in the law after the appeal was filed. Well, I gather the decision of the trial court on this issue was made before the street came down. Is that right? It was actually the original – yes. And let me explain, if I could. It was actually the original decision by the trial court was on a motion to dismiss, which was before street came down. Then street came down. Then the plaintiffs asked for rehearing of that issue in light of street. The trial court distinguished street, saying that that applied to jail cases, but that the function of the sheriff in its law enforcement capacity was still a State function. And there were other cases since then. Then there have been three other cases since then, Brewster, Bishop, Paiute and Cortez, all of which say it doesn't matter. Those came down after the appeal was noticed, but before it was briefed. In fact, you look at those cases and you wonder, can the sheriff ever act for the State, right? I think there is one time when the sheriff can act for the State, and there's actually a district court case opinion on point, which is Comprete Cassini, Hawkins v. Comprete Cassini. It was kind of a famous incident. I know that case. And when the – That's the Stumbelt case. That's the Stumbelt case, right, of the late Mr. Hawkins. And in that case, the sheriff is actually providing staff and security for the State superior court. For who? Judge – trial judge Pragerson, Dean Pragerson, held that that was a State function way back before Street. And that case may actually still be good law because clearly the superior courts are the arm of the State. But other than when a sheriff is executing directly in order of the superior court, I don't think there is any basis for finding that the sheriff is a State actor. At least in California. All right. State by State. Thank you. If there are no questions, thank you, Your Honors. Okay. Thank you. Now, since you have a cross-appeal, you know, you can have rebuttal on your cross-appeal only, though. All right? I think I can. And I don't know if I'll need it or not, but thank you. Thank you. Regarding the 5150 issue, we believe that it's – the denial – or excuse me, the grant of qualified immunity is not appealable because that issue had to deal solely with the justification for entry. Review of that decision is not necessary to determine the excess of forced issues. So we would say that is not – the grant of immunity doesn't fall within the appended jurisdiction of the court. Secondly, what I'd like to leave the court with on the 5150 issue is we have a reasonable belief they can't get a warrant, they have probable cause of a person – that a person poses a danger to themselves or others due to mental illness. Their only alternative, if they don't enter, is to walk away. We maintain that these officers in this situation did not act with plain incompetence. Therefore, they should be afforded immunity. Additionally, the so-called exigent exception, we think, has been defined too narrowly by the plaintiff. It would encompass an ongoing danger posed by a person who is mentally ill. As to the excessive force claim, Alexander does not provide the requisite notice of unconstitutional conduct as to the entry because the court in that case never decided that the use of a SWAT team to enter was unconstitutional in that case. If we're to follow Saussure, we can only look at preexisting law, which has actually addressed the constitutionality of an issue. Finally, as to the Menil, there's no reason that it cannot be reviewed on final judgment. Therefore, it doesn't fall within the collateral order doctrine. Thank you. All right. Thank you. Do you want anything further? No, thank you, Your Honor. All right. Then this case is submitted. We thank both counsel for your argument.
judges: Noonan, Tashima, Wardlaw